```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
KARINA COSTANTIN,                           06 CV 4631 (MBM)(THK)

            Plaintiff,
                                            FIRST AMENDED COMPLAINT
    - against -
                                            Plaintiff Demands
NEW YORK CITY FIRE DEPARTMENT,              A Jury Trial

            Defendant.
---------------------------------------X
```

Plaintiff, KARINA COSTANTIN, by her attorneys, Brown & Gropper, LLP, complaining of defendant, NEW YORK CITY FIRE DEPARTMENT, alleges:

**NATURE OF ACTION**

1.  This action is brought to remedy claims of national origin discrimination and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A ("Title VII"); and claims of national origin and citizenship discrimination as well as unlawful retaliation in violation of the Administrative Code of the City of New York, §§ 8-101 et seq. (the "Administrative Code").

2.  Plaintiff seeks injunctive and declaratory relief, compensatory and other appropriate relief pursuant to federal and local law.

**JURISDICTION AND VENUE**

3.  Plaintiff, KARINA COSTANTIN, filed a timely complaint

against defendant with the New York City Commission on Human Rights ("City Commission") complaining of acts of discrimination based on national origin and citizenship, on or about November 9, 2004.

4.   Plaintiff filed a timely complaint against defendant with the City Commission complaining of unlawful retaliation on or about May 6, 2005.

5.   Upon information and belief, the City Commission "dually filed" plaintiff's complaint of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

6.   On or about April 25, 2006, the City Commission issued its Notices of Administrative Closure, thereby "closing" its investigations of plaintiff's Complaints alleging discrimination and retaliation, for "administrative convenience" reasons within the meaning of Administrative Code § 8-113(a).

7.   On or about May 16, 2006, the EEOC issued to plaintiff notice informing her of her right to sue defendant in federal court. This complaint is filed within 90 days of plaintiff's receipt of the EEOC notice. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under Title VII.

8.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), and by 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over plaintiff's local law claims.

9.   As the unlawful employment practices complained of herein

were committed, and as a substantial part of the events giving rise to the claim occurred, within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

10.  Plaintiff, KARINA COSTANTIN, is a Brazilian-born resident of the County of New York, State of New York, and at all times material hereto an employee of defendant, NEW YORK CITY FIRE DEPARTMENT.

11.  Upon information and belief, defendant, NEW YORK CITY FIRE DEPARTMENT, was and still is an agency of the City of New York, a municipal corporation, with its principal place of business located at 9 MetroTech Center, Brooklyn, New York, and is an "employer" within the meanings of Title VII, 42 U.S.C. § 2000e(b) and Administrative Code § 8-102(5).

## STATEMENT OF FACTS

12.  Plaintiff was first employed by defendant's Emergency Services Bureau, as an Emergency Medical Technician ("EMT"), on or about October 22, 2001.

13.  At all relevant times, plaintiff was qualified to perform the duties of an EMT.

14.  In or around September 2003 while employed in Battalion 10, plaintiff indicated to defendant's Deputy Chief, Howard Sickles, that she wanted to apply for a cost-free loan offered by

defendant to help defray the cost of course work in connection with paramedic training.

15.   Upon information and belief, in order to qualify for said loan, an applicant needed an overall rating on her performance evaluation of at least "Good" and a "recommendation letter" from a Deputy Chief approving such request.

16.   In or around September 2003, Deputy Chief Sickles advised plaintiff that defendant would not approve her loan request because he did not like plaintiff because she is foreign-born.

17.   On or about October 5, 2003, plaintiff was involuntarily reassigned from Battalion 10 to Battalion 4.

18.   Once plaintiff arrived at Battalion 4 in late 2003, her supervisors continued to engage in pattern of discrimination directed at plaintiff based on her national origin and citizenship.

19.   On or about October 30, 2003, Deputy Chief Sickles refused to provide plaintiff with the needed "recommendation letter" notwithstanding that plaintiff had a "Good" performance evaluation and was enrolled in a paramedic training course.

20.   Plaintiff's supervisors at Battalion 4 also created a hostile work environment for plaintiff, based on her national origin and citizenship, by repeatedly referring to her as "the bomb" and treating her as if she were a terrorist.

21.   From time to time, Lieutenant Stephen Lawrence stated to plaintiff's co-workers with reference to plaintiff: "You're working

with 'the bomb' today".

22. Upon information and belief, Deputy Chief Sickles and Lieutenant Lawrence, and others, referred to plaintiff as "the bomb" because of her foreign-born, national origin.

23. Within a few months of arriving at Battalion 4, Lieutenant Lawrence also reassigned plaintiff from a "steady unit" assignment (from 12:00 a.m. to 8:00 a.m.) to a far less desirable "vacation relief" position.

24. Upon information and belief, plaintiff was made a "vacation fill-in" notwithstanding that her seniority, within Battalion 4, did not require her to work in the lowly position of vacation fill-in.

25. As a vacation fill-in, plaintiff no longer regularly participated on ambulance calls; in addition she would be ordered, from time to time, to sweep and mop the floors, collect and dispose of garbage, and clean the bathrooms, including the toilets. She was also deprived of any regular, steady tour.

26. Given plaintiff's seniority, her reassignment to vacation relief was humiliating and intended to alter the terms and conditions of her employment.

27. By making plaintiff a vacation fill-in, defendant also sharply limited plaintiff's opportunity to advance her career and was causing plaintiff to suffer great emotional distress.

28. From the time plaintiff arrived at Battalion 4 through

the end of 2004, Lieutenant Lawrence repeatedly ridiculed plaintiff by yelling at her: "Do you know how to speak English?" and "Where are you from?".

29. Other times, Lieutenant Lawrence would demean plaintiff by asking her if she could read and write in English; he would also humiliate plaintiff by demanding that she read Ambulance Call Reports aloud in front of her co-workers.

30. On or about July 20, 2004, Lieutenant Lawrence admonished plaintiff and urged her to quit because he claimed she could not properly speak, or write, English; he further indicated to plaintiff that if she did not quit he would cause her employment to be terminated.

31. That same day, on or about July 20, 2004, Lieutenant Lawrence issued an overall "Unsatisfactory" performance evaluation to plaintiff notwithstanding that her Individual Tasks Ratings did not support such an overall rating.

32. On or about August 4, 2004, Lieutenant Lawrence wrongfully denied plaintiff her request for leave and, in so doing, again angrily demanded to know whether plaintiff could read or write in English.

33. From on or about August 4, 2004 through October 7, 2004, plaintiff took an approved, medical leave for major depression caused by the hostile work environment at her job.

34. Plaintiff, feeling continuously harassed, repeatedly

complained of a hostile work environment to Battalion Captain Brian M. Milzoff, Division Chief Mark Steffens and others, and further requested a transfer out of Battalion 4.

35. Feeling continuously harassed, plaintiff filed a complaint with the City Commission on or about November 9, 2004 alleging unlawful discrimination based on national origin and citizenship.

36. Upon information and belief, plaintiff's complaint was served on defendant on or about November 24, 2004 and named defendant together with Deputy Chief Sickles and Lieutenant Lawrence as respondents.

37. Upon information and belief, Deputy Chief Sickles became aware, in late November/early December 2004, of plaintiff's discrimination complaint filed with the City Commission which named him as a respondent.

38. Upon information and belief, Lieutenant Lawrence became aware, in late November/early December 2004, of plaintiff's discrimination complaint filed with the City Commission which named him as a respondent.

39. Soon after defendant was served with a copy of plaintiff's discrimination complaint, defendant began directing a series of retaliatory actions at plaintiff which altered the terms and conditions of her employment and which were adverse to plaintiff and intended to deter plaintiff from engaging in

protected activity.

40. In December 2004, Deputy Chief Sickles and Lieutenant Lawrence, in direct response to plaintiff's discrimination complaint, threatened plaintiff that she would be suspended from her job.

41. In or around late December, 2004, Lieutenant Lawrence removed plaintiff from her Hazardous Materials Unit assignment.

42. At or around the time plaintiff was removed from her Hazardous Materials Unit assignment, she applied for a steady unit assignment which defendant instead gave to a less senior employee who, upon information and belief, was still serving in his probationary period.

43. Instead, defendant again involuntarily assigned plaintiff to work as a vacation fill-in.

44. While again performing vacation relief duties at Battalion 4, plaintiff's job duties included sweeping and mopping floors, removing and disposing of garbage and cleaning bathrooms including toilets; moreover plaintiff stopped regularly participating in ambulance calls and no longer had a regular, steady tour.

45. By assigning plaintiff to again work as vacation relief, defendant retaliated against plaintiff for engaging in protected activity, and again altered the terms and conditions of her employment, sharply limited plaintiff's opportunities to advance

her career and caused her much emotional distress.

46. On or about February 4, 2005 within weeks of when defendant received a copy of plaintiff's discrimination complaint, plaintiff was served with notice of disciplinary charges filed against her for incidents which allegedly occurred roughly seventeen months earlier in August and September, 2003.

47. On or about February 9, 2005, plaintiff was served with notice of additional disciplinary charges for alleged infractions also related back to 2003 and 2004.

48. Upon information and belief, Deputy Commissioner Sickles and Lieutenant Lawrence were responsible for providing defendant's Bureau of Investigations and Trials ("BITS") with the allegations which formed the basis for the aforementioned disciplinary charges which were untimely served on plaintiff.

49. On or about February 23, 2005, defendant's BITS placed plaintiff on a "restricted duty" assignment which prevented her from driving defendant's vehicles and from engaging in any patient care related duties.

50. By placing plaintiff on restricted duty, defendant further limited plaintiff's opportunities to advance her career and again caused her to experience much emotional distress as she was further relegated to performing lowly, humiliating duties.

51. Upon information and belief, plaintiff was placed on restricted duty because of the aforementioned disciplinary charges

served on her in February 2005.

52. Upon information and belief, defendant served its untimely disciplinary charges in retaliation against plaintiff because she filed her discrimination complaint with the City Commission which was received by defendant on or about November 24, 2004.

53. Plaintiff remained on restricted duty from February 23 until June 28, 2005 at which time defendant withdrew virtually every single disciplinary charge against plaintiff.

54. For the period corresponding with plaintiff's restricted duty assignment, defendant provided plaintiff with an "unratable" performance evaluation.

55. By deeming plaintiff "unratable" on her performance evaluation for the period corresponding with plaintiff's restricted duty assignment, defendant further impeded plaintiff's opportunity to advance her career and specifically interfered with plaintiff's ability to receive a promotion to the title of Paramedic.

56. In this period after plaintiff filed her discrimination complaint with the City Commission on or about November 9, 2004, she again complained to defendant that she was being discriminated against and that she was the victim of a hostile work environment.

57. In addition, defendant further discriminated and retaliated against plaintiff by, from time to time, issuing paychecks to plaintiff which were incorrect in amount, and by also

denying her requests for annual leave without stated or good reason.

## AS AND FOR A FIRST CAUSE OF ACTION

58.   Plaintiff repeats each and every allegation contained in paragraphs "1" through "57" as if fully set forth herein.

59.   Defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her national origin, in violation of Title VII, and in so doing altered plaintiff' terms and conditions of employment.

60.   In taking the above-described discriminatory actions, defendant acted intentionally, with malice and reckless indifference to plaintiff's rights under Title VII.

61.   As a result of the discriminatory acts of defendant, plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

## AS AND FOR A SECOND CAUSE OF ACTION

62. Plaintiff repeats each and every allegation contained in paragraphs "1" through "57" as if fully set forth herein.

63.   Defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her national origin, in violation of the City's Administrative Code, and in so doing altered plaintiff's terms and conditions of employment.

64.   In taking the above-described discriminatory actions, defendant acted intentionally, with malice and reckless

indifference to plaintiff's rights under the City's Administrative Code.

65. As a result of the discriminatory acts of defendant, plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

**AS AND FOR A THIRD CAUSE OF ACTION**

66. Plaintiff repeats each and every allegation contained in paragraphs "1" through "57" as if fully set forth herein.

67. Defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her citizenship, in violation of the City's Administrative Code, and in so doing altered plaintiff's terms and conditions of employment.

68. In taking the above-described discriminatory actions, defendant acted intentionally, with malice and reckless indifference to plaintiff's rights under the City's Administrative Code.

69. As a result of the discriminatory acts of defendant, plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

**AS AND FOR A FOURTH CAUSE OF ACTION**

70. Plaintiff repeats each and every allegation contained in paragraphs "1" through "57" as if fully set forth herein.

71. Defendant, by taking adverse action against plaintiff and

by further altering the terms and conditions of her employment, retaliated against plaintiff based on her exercise of "protected activity" (i.e. filing a discrimination complaint with the City Commission complaining of discrimination), in violation of Title VII.

72. In taking the above-described retaliatory actions, defendant acted intentionally, with malice and reckless indifference to plaintiff's rights under Title VII.

73. As a result of the discriminatory and retaliatory acts of defendant, plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

**AS AND FOR A FIFTH CAUSE OF ACTION**

74. Plaintiff repeats each and every allegation contained in paragraphs "1" through "57" as if fully set forth herein.

75. Defendant, by taking adverse action against plaintiff and by further altering the terms and conditions of her employment, retaliated against plaintiff based on her exercise of "protected activity" (i.e. filing a discrimination complaint with the City Commission complaining of discrimination), in a manner which was reasonably likely to deter plaintiff from engaging in such types of protected activity, in violation of the City's Administrative Code.

76. In taking the above-described retaliatory actions, defendant acted intentionally, with malice and reckless indifference to plaintiff's rights under the City's Administrative

Code.

77. As a result of the discriminatory and retaliatory acts of defendant, plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries.

### PRAYER FOR RELIEF

**WHEREFORE,** plaintiff respectfully requests that this Court enter a Judgment:

a) declaring the acts and practices complained of herein to be violations of Title VII and the Administrative Code;

b) enjoining and permanently restraining these violations of Title VII and the Administrative Code;

c) directing defendant to pay to plaintiff compensatory damages, including backpay;

e) awarding plaintiff the costs of this action together with reasonable attorneys' fees; and

f) granting plaintiff such other and further relief as this Court deems necessary and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury of all issues so triable in this action.

Dated: New York, New York
       June 27, 2006

_____

```
                                        BROWN & GROPPER, LLP
                                        By: James A. Brown (JB-6776)
                                        Attorneys for Plaintiff
                                        275 Seventh Avenue, 25th Floor
                                        New York, N.Y.  10001
                                        (212) 366-4600

TO:   MICHAEL A. CARDOZO
      Corporation Counsel
       for the City of New York
      Attorney for Defendant
      100 Church Street, Rm. 2-111
      New York, N.Y.  10007
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

KARINA COSTANTIN,                              06 CV 4631 (MBM)(THK)

                Plaintiff,
                                               CERTIFICATE OF SERVICE
    - against -

NEW YORK CITY FIRE DEPARTMENT,

                Defendant.

---------------------------------------X
```

I, James A. Brown, attorney for plaintiff, Karina Costantin, do hereby certify that on June 27, 2006, I caused a true and correct copy of the FIRST AMENDED COMPLAINT to be served upon the attorney below at the address designated by him for that purpose, by depositing same in a postpaid envelope in an official depository under the exclusive care and custody of the United States Postal Service within New York State.

Dated: New York, New York
       June 27, 2006

```
                                    _____/s/_____
                                    BROWN & GROPPER, LLP
                                    By: James A. Brown (JB-6776)
                                    Attorneys for Plaintiff
                                    275 Seventh Avenue, 25th Floor
                                    New York, N.Y.  10001
                                    (212) 366-4600
```

TO:  MICHAEL A. CARDOZO
     Corporation Counsel
      for the City of New York
     Attorney for Defendant
     100 Church Street, Rm. 2-111