UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
KARINA COSTANTIN,

                                          Plaintiff,

- against -

NEW YORK CITY FIRE DEPARTMENT,

                                          Defendant.

**DEFENDANT'S RULE 56.1 STATEMENT**

Docket No. 06 CV 4631 (GBD)

------------------------------------------------------------------------x

      Pursuant to Rule 56.1 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and this Court's motion rules, defendant New York City Fire Department ("FDNY" or "Defendant"), by its attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, submits this statement of material facts upon which there are no issues to be tried.

      1.      Plaintiff Karina Costantin ("Costantin" or "Plaintiff"), an Emergency Medical Technician ("EMT"), with the New York City Fire Department ("FDNY" or "Defendant"), commenced this action alleging that FDNY violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the New York City Human Rights Law, Administrative Code of the City of New York, §§ 8-101 *et seq.* ("NYCHRL") by discriminating against Plaintiff because of her national origin, citizenship, and in retaliation for filing a discrimination complaint with the New York City Commission on Human Rights. (Amended Complaint, ¶ 1 and NYCCHR Verified Complaint, sworn to May 6, 2005 ("NYCCHR Complaint II"), ¶ 14 annexed to the Declaration of Daniel Chiu, dated August 11, 2008 ("Chiu Dec") as Exhibits G and I, respectively).

2. Plaintiff is from Brazil and is a naturalized American citizen. (NYCCHR Verified Complaint, sworn to November 9, 2004 ("NYCCHR Complaint I"), ¶ 1, Chiu Dec., Ex. H).

3. On June 26, 2003, Plaintiff received a Command Discipline for sleeping while on duty, abandoning her post, and being absent without leave. (Chiu Dec., Ex. J). Plaintiff was penalized one vacation day. (Chiu Dec., Ex. J).

4. Charges and specifications were proffered against plaintiff alleging that on August 20, 2003, Plaintiff was involved in a verbal altercation with her partner and violated FDNY policies and procedures by refusing to lift a patient into an ambulance. (Deposition of Karina Costantin, July 10, 2007 ("Costantin dep. I") at 97:14-100:11 and 160:5-163:9, Chiu Dec., Ex. A; Chiu Dec., Ex. K).

5. On September 7, 2003, Plaintiff received a Lateness Conference Warning for being more than 30 minutes late on 3 separate occasions. (Chiu Dec., Ex. L).

6. On September 24, 2003, Plaintiff received Charges and Specifications charging her with abandoning her post on September 18, 2003. (Chiu Dec., Ex. M). To resolve the charges, Plaintiff agreed to accept a penalty of three days annual leave. (Chu Dec., Ex. M).

7. On October 5, 2003, Plaintiff was reassigned from Battalion 10 to Battalion 4. (Amended Complaint, ¶ 17, Chiu Dec., Ex. G). Plaintiff believes she was transferred because of her national origin. (Costantin dep. I at 123:15-7, Chiu Dec., Ex. A). However, FDNY transferred Plaintiff to give her a fresh start in a new environment after altercations Plaintiff admitted having with her coworkers. (Costantin dep. I at 46:1-4, Chiu Dec., Ex. A; Deposition of Howard M. Sickles, August 7, 2007 ("Sickles dep."), at 24:7-22, 26:16-27:9, and 27:19-25, Chiu Dec., Ex. D).

8. Plaintiff claims that on October 30, 2003, Deputy Chief Howard Sickles refused to provide Plaintiff with a recommendation letter to permit Plaintiff to qualify for a cost-free loan because she is foreign-born. (Amended Complaint, ¶¶ 14-6, and 19, Chiu Dec., Ex. G).

9. Deputy Chief Sickles testified that he did not provide Plaintiff with a recommendation letter because she did not have a good performance evaluation, had outstanding charges, and attendance problems. (Sickles dep. at 33:8-17, Chiu Dec., Ex. D).

10. Deputy Chief Sickles also did not know Plaintiff's nationality or her place of birth when he decided not to provide Plaintiff with a recommendation letter. (Costantin dep. I at 35:20-36:5, Chiu Dec., Ex. A; and Sickles dep. at 97:14-98:9, Chiu Dec., Ex. D).

11. Plaintiff received a "Conditional" rating on her performance evaluation for the period January 1, 2003 to December 31, 2003 and received a warning for tardiness and was brought up on two separate charges for refusing overtime. (Chiu Dec., Ex. N at 5). To resolve the charges, Plaintiff agreed to accept a penalty of three days annual leave. (Chu Dec., Ex. M). Plaintiff's performance evaluation further stated that Plaintiff would "be assigned pre-scheduled tours to prevent mandated overtime. She will be given mutual tour change to prevent further absences." (Chiu Dec., Ex. N at 5).

12. In or about February or March 2004, Plaintiff was reassigned from a "steady unit" assignment to "vacation fill-in." (Costantin dep. I at 65:8-21, Chiu Dec., Ex. A). Plaintiff previously worked on the midnight tour. (Costantin dep. I at 65:4-7, Chiu Dec., Ex. A).

13. As a vacation fill-in, Plaintiff would take ambulance calls and perform administrative tasks to ensure that the Battalion was properly organized. (Deposition of Karina Costantin, dated July 27, 2007 ("Costantin dep. II"), at 9:4-25 and 77:17-78:3, Chiu Dec., Ex. B). When Plaintiff worked on a steady unit she was assigned to an ambulance and took ambulance calls. (Costantin dep. I at 38:17-21, Chiu Dec., Ex. A).

3

14. Plaintiff also claims that she was required to sweep and mop floors, dispose of garbage, and clean bathrooms while working as a "vacation fill-in." (Amended Complaint, ¶ 25, Chiu Dec., Ex. G).

15. Other EMTs were also cleaned the station house and disposed of garbage. (Costantin dep. II at 10:9-14, Chiu Dec., Ex. B; Deposition of Stephen Lawrence, dated August 7, 2007 ("Lawrence dep."), at 21:18-22:2, Chiu Dec., Ex. F). Plaintiff's supervisor, Lt. Lawrence, cleaned the bathrooms. (Costantin dep. II at 12:3-11, Chiu Dec., Ex. B; Lawrence dep. at 20:4-5, 21:11-14, Chiu Dec., Ex. F).

16. Mopping floors, collecting garbage, cleaning bathrooms and toilets fell within an Plaintiff's job duties. (Costantin dep. II at 8:2-9, Chiu Dec., Ex. B).

17. Plaintiff claims that she was assigned as a "vacation fill-in" because she was foreign born. (Constantin dep. II at 15:21-24, Chiu Dec., Ex. B).

18. At the time Plaintiff was assigned as a vacation fill-in, she was taking classes at the Borough of Manhattan Community College. (Costantin dep. I at 34:3-14, Chiu Dec., Ex. A; and Deposition of Karina Costantin, dated February 15, 2008 ("Costantin dep. III"), at 71:16-24, Chiu Dec., Ex. C). As a vacation fill-in, Plaintiff did not have a fixed schedule and her shift could be changed. (Costantin II dep. 77:17-78:3, Chiu Dec., Ex. B).

19. On July 20, 2004, Plaintiff received a Non-Managerial Performance Evaluation with an overall rating of Unsatisfactory. (Chiu Dec., Ex. O). Plaintiff's performance evaluation again stated that Plaintiff would "be assigned pre-scheduled OT tours to prevent mandated overtime. She will be given mutual tour changes, if possible, to prevent further absences." (Chiu Dec., Ex. O at 5).

20. Plaintiff was on medical leave from August 4, 2004 through October 7, 2004. (Amended Complaint, ¶ 33, Chiu Dec., Ex. G).

4

21. Upon Plaintiff's return from medical leave, she was assigned to cover the HAZMAT Unit because the person assigned to the job was on vacation. (Costantin dep. III at 20:9-25, Chiu Dec., Ex. C).

22. Plaintiff was not HAZMAT certified. (Costantin dep. III at 20:9-14, Chiu Dec., Ex. C).

23. On November 9, 2004, Plaintiff filed a complaint with the NYCCHR alleging that Deputy Chief Sickles refused to provide Plaintiff with a recommendation letter to permit Plaintiff to complete the application for the Paramedic/Forgivable Loan. (NYCCHR Complaint I, ¶ 9, Chiu Dec., Ex. H).

24. Plaintiff's NYCCHR Complaint also alleged that Lieutenant Stephen Lawrence told Plaintiff that she could not speak or write English properly. (NYCCHR Complaint I, ¶ 11, Chiu Dec., Ex. H). Plaintiff claims that Lt. Lawrence required Plaintiff to read her reports aloud to ridicule her accent. (Costantin dep. II at 16:9-18, Chiu Dec., Ex. B).

25. Plaintiff and Lt. Lawrence both testified at their depositions, however, that Lt. Lawrence required Plaintiff to read her reports aloud because her handwriting was illegible to him. (Costantin dep. II at 60:5-21, Chiu Dec., Ex. B; Lawrence dep. at 80:13-82:13, Chiu Dec., Ex. F).

26. Plaintiff was informed that her paperwork must be neat and legible. (Chiu Dec., Ex. O at 2). Plaintiff's response was that she should be sent to training to learn how to write legibly. (Costantin dep. II at 81:15-82:2, Chiu Dec., Ex. B; Chiu Dec., Ex. O at 2).

27. Plaintiff's first NYCCHR Complaint did not allege that Plaintiff was assigned to vacation fill-in and required to sweep floors, dispose of garbage, and clean bathrooms, because of her national origin or that she was foreign-born. (NYCCHR Complaint I, Chiu Dec., Ex. H).

28. On May 6, 2005, Plaintiff filed a second complaint with the NYCCHR alleging that she was removed from the Hazardous Materials Unit, disciplinary proceedings were commenced against her, she was removed from a regular unit and designated a "vacation fill-in," and that she was placed on restricted duty in retaliation for filing NYCCHR Complaint I. (NYCHHR Complaint II, ¶¶ 6-11, Chiu Dec., Ex. I).

29. Plainitff's second NYCCHR complaint did not allege that she was discriminated against because of her national origin, or that she was foreign-born. (NYCHHR Complaint II, Chiu Dec., Ex. I).

30. On February 1, 2005 and February 18, 2005, Plaintiff was served with six and eighteen charges, respectively. (Chiu Dec., Exs. P and R).

31. The February 1, 2005 charges related to incidents that occurred on August 20, 2003 and September 18, 2003. (Chiu Dec., Exs. P and Q, respectively). On August 20, 2003 and September 18, 2003, it was recommended that the February 1, 2005 Charges and Specifications be preferred against Plaintiff. (Chiu Dec., Exs. P and Q).

32. The February 18, 2005 Charges related to incidents that occurred between February 29, 2004 and November 16, 2004. (Chiu Dec., Exs. R and S). On May 29, June 12, July 28, and August 4, 2004, it was recommended that Charges and Specification be preferred against Plaintiff. (Chiu Dec., Exs. R and S).

33. As a result of being served the specifications and charges, the Bureau of Investigations and Trials ("BITs") restricted Plaintiff from performing patient care and driving duties, effective February 23, 2005. (Chiu Dec., Ex. T).

34. On May 23, 2005, Plaintiff was reassigned to Battalion 8. (Chiu Dec., Ex. U). Captain Amy Monroe was the Commanding Officer of Battalion 8. (Chiu Dec., Ex. U).

35. On June 28, 2005, to resolve the February 1 and 18, 2005 specifications and charges, Plaintiff entered into an Agreement of Penalty and Waiver of Rights. (Chiu Dec., Ex., V). Pursuant to the Agreement, Plaintiff agreed to accept a penalty of two days pay and two days annual leave in full satisfaction of the charges and further agreed to waive "any and all rights [Plaintiff] may have under…Title VII of the Civil Rights Act of 1964, as amended, New York City Human Rights law, and any other federal, state or local statute or regulation arising from the Notice of Charges, the acts, events and circumstances giving rise to the Notice of charges." (Chiu Dec., Ex. V).

36. Effective that day, June 28, 2005, the patient care and driving restriction placed on Plaintiff by BITs was lifted. (Chiu Dec., Ex. W).

37. On July 12, 2005, Plaintiff requested an upgrade to Paramedic. (Chiu Dec., Ex. X). This is the only occasion in which Plaintiff requested an upgrade to Paramedic. (Chiu Dec., Ex. X).

38. Although Plaintiff has served under Captain Amy Monroe for only two months, Captain Monroe endorsed Plaintiff's request and recommended her for upgrade to Paramedic. (Chiu Dec., Ex. X).

39. EMS Division Chief Mark Steffens informed Captain Monroe that she was required to substantiate her recommendation to upgrade Plaintiff to paramedic. (Steffens dep. at 52:5-16). Chief Steffens testified that when Captain Monroe was unable to substantiate her basis for recommending Plaintiff's upgrade to him, Captain Monroe was directed by him to change her recommendation. (Steffens dep. at 54:2-25; Chiu Dec., Ex. Y).

40. On September 7, 2005, Plaintiff's request for a paramedic upgrade was denied. (Chiu Dec., Ex. Z).

7

41.     Plaintiff claims that she was subjected to a hostile work environment because she was referred to as "the bomb." (Amended Complaint, ¶ 20; Costantin dep. I at 137:21-140:8).

42.     Plaintiff, however, never heard any of her coworkers or supervisors make a derogatory comment about Brazilians. (Costantin dep. I at 142:2-22). NYCCHR Complaint I and II were dual-filed with the U.S. Equal Employment Opportunity Commission. (Amended Complaint, ¶ 5, Chiu Dec., Ex. G).

43.     Plaintiff did not allege that she was subjected to hostile-work environment harassment in any of the complaints she filed with the New York City Commission on Human Rights. (Chiu Dec., Exs. H and I).

Dated: New York, New York
       September 8, 2008

                MICHAEL A. CARDOZO
                Corporation Counsel of the City of New York
                Attorney for Defendant
                100 Church Street, Room 2-115
                New York, New York 10007
                212-788-1158

                By: _____
                     Daniel Chiu (DC-3381)
                     Assistant Corporation Counsel

To:    BROWN & GROPPER, LLP
       Attorneys for Plaintiff
       275 Seventh Avenue, 25th Floor
       New York, New York 10001
       212-366-4600

## CERTIFICATION OF SERVICE

I, Daniel Chiu, hereby certify that:

On September 8, 2008, I served the annexed Defendant's Rule 56.1 Statement by depositing a true and correct copy, into the custody of United States Postal Service, in an enclosed envelope with sufficient postage for first-class mail addressed to:

>Brown & Gropper, LLP
>Attorneys for Plaintiff
>275 Seventh Avenue, 25th Floor
>New York, New York 10001

I certify under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
September 8, 2008

_____
Daniel Chiu